UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 1:23CR00117 AGF |
| ) | |
| RAYFORD EVANS, ) | |
| ) | |
| Defendant. ) | |

**ORDER ADOPTING REPORT AND RECOMMENDATION**

In this case Defendant Rayford Evans is alleged to have made a video on his cell phone of a minor female while she was in the bathtub. Defendant is charged with one count of sexual exploitation of a minor, in violation of 18 U.S.C. § 2251. The matter is before the Court on the Defendant's pretrial motions. Defendant filed a Motion to Suppress Evidence. (ECF No. 19). All pretrial motions were referred to Magistrate Judge Abbie Crites-Leoni under 28 U.S.C. § 636(b).

In his motion to suppress evidence, Defendant seeks to suppress any evidence obtained from the search of his cell phone. Defendant asserts that his consent to give the officer his cell phone was coerced by the threat of unlawful action. While conceding that he provided verbal and written consent to search the cell phone soon thereafter, he contends that the consent to search was tainted by the unlawful violation giving rise to the seizure of the cell phone and should be suppressed as the fruit of the unlawful seizure. In response to the government's arguments, Defendant further asserts that exigent circumstances did not exist as there was neither probable cause nor any exigency. Finally, he asserts that the subsequent search warrants should be denied as the evidence

from the cell phone also tainted the subsequent search warrant used to seize additional devices and evidence.

Judge Crites-Leoni held an evidentiary hearing on April 3, 2024, at which four people testified: Officer Brandon Smith, Case Agent Douglas Settle, the victim, and her father. On November 1, 2024, Judge Crites-Leoni issued a Report and Recommendation ("R&R"), recommending that Defendant's motion be denied. (ECF No. 45.) Defendant filed objections, generally asserting the same grounds as asserted in the motion to suppress. (ECF No. 48.) In his objections, Defendant essentially objects to the conclusions reached by the Magistrate Judge.[1]

When a party objects to an R&R concerning a motion to suppress in a criminal case, the court is required to "make a de novo determination of those portions of the report or specified findings or recommendations to which objection is made." *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (quoting 28 U.S.C. § 636(b)(1)). The Court conducted a *de novo* review of the motion to suppress, including a review of the transcript of the hearing and of the officer's body camera video that captured the entire interaction with Defendant in which he agreed to give the officer his cell phone and then consented to a

---

[1] The only objection to the factual findings Defendant asserts is that the officer did not know after conducting his initial investigation that Defendant "was the only adult at the residence at the time of the alleged incident." *See* R&R, p.20. No evidence was specifically elicited as to this fact. However, that was the only reasonable assumption. The officer was advised that Ancel Teal (Defendant's brother) and his mother were not at the residence at the time of the incident, and that after the incident the victim and her friend escaped outside and had to call Ancel Teal to come and get them. This finding is not essential though, as soon after the event, the victim advised her friend, her friend's father (Ancel Teal) and her own father that she believed Defendant was the one she saw taking pictures of her while she was in the bathtub, and she had good cause for that belief.

2

search of the cell phone.   Based on that review, the undersigned concludes that the Magistrate Judge made proper factual findings and correctly analyzed the issues.   For the reasons set forth more fully in the R&R, the Court will deny Defendant's motion to suppress.

The facts are set forth in full in the R&R and will not be repeated here.   The Court finds the facts stated in the R&R to be well-supported by the record.   In summary, the victim, E.R., was a fifteen-year-old girl spending the night at the residence of her close friend.   Also staying at the home at the time was her friend's father, Ancel Teal; Ancel Teal's mother; her friend's younger brother; and the Defendant, who is her friend's uncle and Ancel Teal's brother.   In the morning, the victim E.R. decided to take a bath while her friend and her friend's little brother were still sleeping.   While E.R. was gathering her clothes, Defendant walked into the room, looked at E.R. and her friend and then left.   While E.R. was taking her bath, she looked up and saw a cell phone facing her through the open transom, and believed she was being recorded.   When she looked up, the phone quickly disappeared and she heard the person walk into the Defendant's room, next door to the bathroom, and shut the door.   She observed the phone was black with three camera lenses.

E.R. was very upset and advised her friend what had occurred.   They then contacted her friend's father, Ancel Teal, who was out shopping with his mother at the time, to come and get them.   E.R. was crying when she told Ancel Teal what had happened.   He then called E.R.'s mother and arranged to meet E.R.'s parents at a gas station in town.   E.R.'s father was a sheriff's deputy with the Ripley County Sheriff's department, on leave following surgery.   When they arrived, E.R. was crying and she told her parents what had occurred.   E.R.'s father knew the Doniphan Police Department would have jurisdiction over the offense, and he contacted an officer at the department that he knew, Brandon Smith.

3

The Doniphan Police Department is very small, with only five officers, and Smith was the only officer on duty at the time. Officer Smith spoke with E.R.'s father and Ancel Teal, and then obtained a description of the phone from the victim (through her father), and thereafter confirmed with Teal that the description matched the main cell phone used by Defendant. He then went to Defendant's residence – where the incident had occurred – to speak with Defendant. This occurred at approximately 5:15 p.m., just hours after the incident, and his full interaction with Defendant is captured on his body camera.

The body camera video shows that Officer Smith went to Defendant's residence and asked to speak with Defendant. He had had prior dealings with Defendant a few months earlier regarding a property line dispute with his neighbor. Defendant came out on the porch, closing the screen door. His discussion with Defendant on the porch lasted approximately one minute and thirty seconds. Officer Smith did not attempt to question Defendant about the incident. Rather, he advised Defendant that they got a report that he was taking some pictures of little girls in the bathroom. Defendant said, "Well, that's not true, but –". Officer Smith then said, "And I'm on the same page with you but I still gotta do my job, you know and investigate." He advised Defendant he would not be arresting him, saying "you're not coming with me," and that he was just there to talk. He asked if Defendant had the phones on him. When Defendant responded they were in the house, Officer Smith advised Defendant he was going to have to take the phones for evidence. While telling Defendant more than once that he didn't see that the incident had happened, he said he was going to request consent to search and would get to that. Defendant said he'd have to consult with a lawyer and ask for a warrant. The officer responded that was fine, and that they would get a warrant, but that he would have to seize the phones today for

4

evidence. Defendant immediately stated, "Not without a warrant." The officer responded, "Yes sir, absolutely, or you can go to jail for, uh, obstruction, okay?" Defendant appeared to be listening as the officer calmly explained that he needed to get the phones because if he left, how would he know Defendant would not delete something. The officer twice said that without a warrant he could walk in and get the phones, that he was only trying to assure that evidence could not be destroyed, but that he was "trying to show [him] a little respect and talk to him." He then said he was going to need both phones tonight and asked if Defendant was willing to give those up. Defendant responded, "Ah yeah, I guess." Officer Smith advised Defendant that he would go over the consent to search with him, and that Defendant could deny consent to search. Defendant was then permitted to go into the home, by himself, and he returned approximately three minutes later with the cell phone.

For the reasons set forth more fully in the R&R, the Court first finds that at the time Officer Smith approached Defendant's residence, he had probable cause to believe that an offense had occurred and that evidence of that offense could be found on Defendant's cell phone. He did not personally interview the victim at that time because office policy required that the interview be conducted by someone professionally trained to interview juveniles, and that interview could not be arranged until the next day. But he had received E.R.'s accounts both from Teal, who is Defendant's brother, and from the victim's father, who is a trained police officer. Those accounts were given very soon after the events occurred and were consistent with one another. Officer Smith called the victim's father back to obtain a description of the cell phone, and he could hear that the victim was providing information to her father, who then described the phone to Officer Smith. Officer

5

Smith also spoke with Teal, who confirmed that the description matched Defendant's main cell phone.

Based on these facts, Officer Smith had probable cause to believe that Defendant had made a video of E.R. in the bathtub and that evidence of the conduct would be found on the cell phone. *See United States v. Shrum*, 59 F.4th 968, 972 (8th Cir. 2023) (finding probable cause to seize the defendant's cell phone based on text messages viewed by victim's friends although victim, when interviewed next day, denied conduct and said she did not want to get the defendant in trouble); *United States v. Mays*, 993 F.3d 607, 614 (8th Cir. 2021) (finding probable cause to seize the defendant's laptop based on information from the defendant's uncle that the defendant, accused of fraudulently representing himself to be an attorney, often had his laptop with him and that he had a file marked "evidence").

The Court also agrees with the reasoning in the R&R that Defendant voluntarily consented to turning over his cell phone. Based on all of the circumstances, the Court finds that Defendant's will was not overborne. *See United States v. Williams*, 760 F.3d 811, 815 (8th Cir. 2014); *United States v. LeBrun*, 363 F.3d 715, 725 (8th Cir. 2004) (en banc) ("Whatever the facts of an individual case, our polestar always must be to determine whether or not the authorities overbore the defendant's will and critically impaired his capacity for self-determination."). Defendant appeared to be a person of normal intelligence with some degree of understanding as to his rights under the Fourth Amendment, did not appear to be under the influence, and appeared to have a clear understanding of what the officer was saying to him. The conversation occurred on Defendant's porch, early in the evening, was cordial and respectful at all times, and lasted less than two minutes, and Defendant was advised that he would not be arrested. Defendant thereafter went into his home,

6

unaccompanied, for several minutes and therefore had time to reflect and reconsider, or even call an attorney if he wished, before providing the cell phone.

Defendant objects that the officer misrepresented the facts and improperly coerced Defendant by stating Defendant could be arrested for obstruction of justice. This poses a closer question. Based upon a review of the video and Defendant's immediate oppositional response, it was somewhat reasonable for the officer to believe that Defendant intended to attempt to prevent him from obtaining the cell phone. If that was the case, the officer could arrest Defendant for obstruction. As the officer also acknowledged at the hearing, if Defendant simply refused, he would likely detain Defendant while he sought a search warrant, which would be permitted under the Fourth Amendment. *Ill. v. McArthur*, 531 U.S. 326, 329, 337 (2001); *United States v. Ruiz-Estrada*, 312 F.3d 398, 404 (8th Cir. 2002). Given that Officer Smith was the only one on duty at the small police department, that detention likely would have lasted several hours.

But assuming the officer misstated the law, under the totality of the circumstances, and based on a careful review of the video of their interaction, the Court agrees with the finding in the R&R that Defendant's will was not overborne and that his consent to turn over the cell phone was voluntary. As set forth above, the statement was limited and stated calmly; Officer Smith and Defendant thereafter engaged in calm conversation in which the officer explained he was simply trying to safeguard the evidence and that any search of the phone could await a search warrant; and Defendant was permitted to enter his home, unaccompanied, after which he returned with his cell phone. *See United States v. Harris*, 55 F.4th 575, 581 (8th Cir. 2022) (finding consent voluntary although officers drew weapons and made misrepresentations, as weapons were put away when the defendant consented to

7

search); *United States v. Azua-Rinconada*, 914 F.3d 319, 324-25 (4th Cir. 2019) (finding consent voluntary though officers told the defendant to open the door or they would "knock it down" where statement was limited and the officer's partner thereafter conversed with the defendant in a casual manner). After returning with his cell phone, Defendant acknowledges that he agreed both orally and in writing to the search of his cell phone, having been fully advised of his right to refuse consent.

Defendant's arguments to suppress the search of his cell phone and the subsequent search pursuant to the warrant are all dependent on his assertion that the initial seizure was unlawful. Because the Court finds that Defendant voluntarily consented to turn over his cell phone, his further arguments also fail.

Assuming arguendo Defendant did not voluntarily consent to turn over the cell phone, his voluntary consent to search the cell phone purged the taint of any unlawful act in obtaining custody of the cell phone or was sufficiently attenuated. Even if a seizure is invalid, a later voluntary consent to search may "purge the taint . . . if it was given in circumstances that render it an independent, lawful cause of the officer's discovery." *United States v. Herrera-Gonzalez*, 474 F.3d 1105, 1111 (8th Cir. 2007). Factors include the temporal proximity between the illegal seizure and the consent, the presence of intervening circumstances, and the purpose and flagrancy of the officer's misconduct. No single factor is dispositive. *Id.*; *United States v. Becker*, 333 F.3d 858, 862-63 (8th Cir. 2003). Here, a fair amount of time passed between the time Defendant agreed to turn over his phone and the time he provided written consent to search. During that time, Defendant was repeatedly advised, both initially and throughout his interaction with the officer, that even if he provided the cell phone to the officer to safeguard any evidence, he could still refuse to consent to a

8

search and consult with an attorney if he wished. Defendant permitted the officer to come into his home as Defendant unsuccessfully searched for his second cell phone, and he interacted calmly with the officer. Defendant asked questions about how the search would be conducted, and the officer answered his questions. Defendant said more than once that he "did not care'" whether the officer looked through his phone. As the Magistrate Judge noted in the R&R, Defendant "lamented the fact that Officer Smith couldn't conduct the search onsite" (R&R at 27), a contemporaneous reaction consistent with consent. Defendant thereafter reviewed and signed a written consent-to-search form that again fully advised Defendant of his right to refuse consent and to demand that a search warrant be obtained. Finally, any misconduct by the officer was not flagrant. The officer reasonably believed that he was authorized to seize the cell phone without a warrant, in order to safeguard the evidence, and was reasonable in seeking consent to seize the cell phone rather than detaining Defendant for hours while he obtained the assistance of other officers and a search warrant. Thus, even if the Court were to find the cell phone was unlawfully seized – and the Court does not so find – Defendant's consent to search was a sufficiently independent act of free will to purge the taint of any unlawful conduct. *Harris*, 55 F.4th at 582.

Aside from Defendant's consent to the seizure of the cell phone, the Court also finds that exigent circumstances supported seizure of the cell phone without a warrant. "The existence of exigent circumstances is an objective analysis focusing on what a reasonable, experienced police officer would believe." *Mays*, 993 F.3d at 616 (quoting *United States v. Williams*, 431 F.3d 1115, 1118 (8th Cir. 2005)). Here it was reasonable for an officer to believe Defendant might delete the evidence from the cell phone. Defendant's brother told the officer that Defendant already knew he had been accused of recording the victim. A

9

review of the video corroborates Defendant's advance knowledge.  He was not surprised when Officer Smith told him they had gotten a report that he was taking some pictures of little girls in the bathroom, and he did not ask any questions about it.  Under the circumstances, and knowing how easily evidence could be deleted from a cell phone, it was objectively reasonable for the officer to be concerned that Defendant could destroy the evidence.  Defendant's initial reaction to the request provided additional cause for concern. *Shrum*, 59 F.4th at 972-73 (finding exigent circumstances where the defendant had been advised of the accusation for which evidence existed on his cell phone).  *See also United States v. Meyer*, 19 F.4th 1028, 1033 (8th Cir. 2021); *Mays*, 993 F.3d at 617 (finding exigent circumstances though the computer was not then in the defendant's possession); *United States v. Stephen*, 984 F.3d 625, 631 (8th Cir. 2021) (finding exigent circumstances supported receiving USB containing child pornography from third party who had reviewed the USB drive).[2]

Nor did the officer create the exigency here.  Officer Smith was the only officer on duty in a very small police department. The officer had reasonable cause to be concerned that the evidence would be deleted with the touch of a button, given that Defendant had been advised of the accusation, and the officer promptly contacted Defendant to seek his consent. Any delay while he sought a warrant risked the destruction of the evidence, and there was no other officer available at the time to secure Defendant and the house while Officer Smith sought a warrant.  *See Kentucky v. King*, 563 U.S. 452, 471-72 (2011) (exigent

---

[2] The Court does not find that the officer's conduct in permitting Defendant to enter his home unaccompanied to retrieve the cell phone undercuts a finding of exigency.  The officer acknowledged this was probably a mistake on his part, but he was trying to give Defendant "some respect" and believed Defendant was consenting to turning over the phone.

10

circumstances not police-created where police seek consent before seeking a warrant); *Meyer*, 19 F.4th at 103 (police cannot have created an exigency that already existed).

In any event, the Court also agrees with the conclusion in the R&R that suppression is not warranted because the evidence would have inevitably been discovered through independent lawful means. *See United States v. Hammons*, 152 F.3d 1025, 1029-30 (8th Cir. 1998); *United States v. Darrah*, No. 23-cr-0180-bhl, 2024 WL 4263214, at *6 (E.D. Wis. Sept. 23, 2024). As discussed above, Officer Smith had probable cause to search for and seize the cell phone before even seeking consent. He inevitably would have obtained a warrant had consent not been provided, and the evidence would have been discovered as a result of a search warrant. *United States v. Soto-Peguero*, 978 F.3d 13, 18-20 (1st Cir. 2020) (finding evidence discovered during warrantless search was admissible because officer had probable cause to search and would have found evidence had they obtained a search warrant.). Here Officer Smith intended to continue the investigation, including an interview of the victim the next day through a professional trained to interview juveniles. He repeatedly advised Defendant that he would seek a search warrant if Defendant did not wish to consent to a search, and there is every indication that the officer would have done so. Indeed, he thereafter obtained a search warrant for Defendant's other devices. *See United States v. Christy*, 739 F.3d 534, 543-44 (10th Cir. 2014) (inevitable discovery found applicable though no preliminary steps taken to obtain warrant where record supported that officer would have successfully obtained a warrant).

Thus, after careful consideration, the Court will overrule Defendant's Objections, and will adopt and sustain the thorough reasoning of Magistrate Judge Crites-Leoni set forth in support of her recommended ruling.

11

Accordingly,

**IT IS HEREBY ORDERED** that the Report and Recommendation of United States Magistrate Judge [ECF No. 45] is **SUSTAINED, ADOPTED, AND INCORPORATED** herein, and Defendant's Objection to the Report and Recommendation [ECF No. 48] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Suppress Evidence [ECF No. 19] is **DENIED**.

This matter remains scheduled for a Bench Trial on **Tuesday, January 21, 2025 at 9:30 a.m.**  This is a three week docket.

*Audrey G. Fleissig*
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 27th day of December, 2024.